```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------x

EDUARD SANDOVAL,

              Plaintiff,
                                        MEMORANDUM & ORDER
       - against -                      19-CV-6475 (KAM)(SJB)

CREDIT CORP SOLUTIONS INC D/B/A
TASMAN CREDIT, KIRSCHENBAUM &
PHILLIPS,

              Defendants.

---------------------------------x
```

KIYO A. MATSUMOTO, United States District Judge:

Plaintiff Eduard Sandoval filed a complaint in the District Court of the State of New York, Nassau County, on October 21, 2019, against Credit Corp. Solutions Inc d/b/a Tasman Credit and Kirschenbaum & Phillips (together, "defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.  (*See* ECF No. 1, Notice of Removal, attaching Complaint ("Compl.")); *Eduard Sandoval vs. Credit Corp. Solutions Inc, DBA Tasman Credit Kirschenbaum & Phillips*, CV-018868-19, (N.Y. Dist. Ct. Nassau Cnty. 2019).  On November 15, 2019, defendants timely removed the case to federal court.  (ECF No. 1.)

On February 25, 2021, defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF

1

No. 15.)  For the reasons set forth below, defendants' motion for summary judgment is granted in its entirety.

## BACKGROUND

The court has taken the facts set forth below from the parties' affidavits, and exhibits, and from the parties' respective Rule 56.1 statements of facts.  (*See* ECF Nos. 15-4, Defendants' 56.1 Statement ("Defs. 56.1"); 16-1, Plaintiff's Response to Defendants' 56.1 Statement ("Pl. Resp.").)  Upon consideration of the defendants' motion for summary judgment, the court shall construe the facts in the light most favorable to the non-moving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).  Unless otherwise noted, where a party's 56.1 statement is cited, that fact is deemed to be undisputed if the opposing party has not proffered evidence in the record to contradict it.

### I.  Procedural History

Plaintiff commenced this FDCPA action in the District Court in Nassau County on October 21, 2019.  (Pl. Resp. ¶ 1.)  On November 15, 2019, defendants timely removed the case to federal court based upon federal question jurisdiction.  (ECF No. 1, Notice of Removal.)  On January 11, 2020, defendants filed an answer to plaintiff's complaint.  (ECF No. 7, Answer.)

On December 31, 2020, defendants requested a pre-motion conference, seeking leave to file a motion for summary

judgment. (ECF No. 14.) On January 4, 2021, this court set a schedule for defendants' motion for summary judgment. (Dkt. Order 1/4/2021.) On February 24, 2021, the parties submitted the defendants' motion for summary judgment, plaintiff's opposition, and the supporting submissions. (*See* ECF Nos. 15, Defendants' Notice of Motion for Summary Judgment; 15-1 Defendants' Memorandum of Law and Supporting Submissions ("Def. Mem."); 16, Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp."); 17, Defendants' Reply in Support of Defendants' Motion for Summary Judgment ("Def. Reply").)

## II. Factual Background

On July 10, 2018, defendant Credit Corp. Solutions Inc. d/b/a Tasman Credit ("Credit Corp.") sent a "Validation Notice" to plaintiff, informing plaintiff that a debt in the amount of $22,392.78 allegedly arising from plaintiff's WebBank credit account ending in 8903 had been assigned to Credit Corp. (ECF No. 15-2, Affirmation of James P. Scully, Esq. ("Scully Aff."), Ex. A.) On July 11, 2018, Credit Corp. sent a substantially similar "Validation Notice" to plaintiff, identifying the same credit account ending in 8903 and debt of $22,392.78 and similarly notifying plaintiff of Credit Corp.'s ownership of the debt. (ECF No. 16, Plaintiff's Ex. 2.) Each notice contained the following language:

3

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request, in writing, from this office within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Scully Aff., Ex. A; ECF No. 16, Plaintiff's Ex. 2.)

On October 24, 2018, plaintiff responded with a letter seeking validation of the debt. (Scully Aff., Ex. B.) Specifically, plaintiff sought "all my statements since the account was opened until it was closed" and demanded a "copy of the credit application that was done on line or in person to show that [plaintiff] was the primary account holder and not an authorized user." (*Id.*) On November 16, 2018, Credit Corp. responded to plaintiff and provided documents related to the WebBank credit account ending in 8903, including a loan agreement, loan summary, borrower membership agreement, terms of use, truth in lending disclosure, and a spreadsheet describing the amount borrowed, along with the application of payments, interest and charges to the account. (Scully Aff., Ex. C.)

4

On or about December 2018, defendant Kirschenbaum & Phillips ("K&P") was retained by Credit Corp. to collect the outstanding debt from plaintiff.  (Defs. 56.1 ¶ 2; Pl. Resp. ¶ 2.)  On December 31, 2018,  K&P sent plaintiff an initial demand letter setting forth the amount due and the creditor information related to the account, and providing thirty days for plaintiff to dispute the debt pursuant to 15 U.S.C. § 1692(g).  (Defs. 56.1 ¶ 2; Pl. Resp. ¶ 2; Scully Aff., Ex. D.)  On February 12, 2019, having not received a response from plaintiff, K&P commenced a lawsuit on behalf of Credit Corp. against plaintiff in the Supreme Court of New York, Nassau County (Index Number 602070-2019) (the "Collection Action").  (Defs. 56.1 ¶ 3; Scully Aff., Ex. E, Collection Action Complaint.)

On or about February 19, 2019, K&P received a dispute letter from plaintiff dated January 16, 2019, requesting "the original promissory note and/or contract," an "account and general ledger statement," and other documentation.  (Defs. 56.1 ¶ 4; Pl. Resp. ¶ 4; Scully Aff., Ex. F.)  On or about March 8, 2019, K&P sent plaintiff a verification letter and provided documents related to the credit account ending in 8903, including a loan agreement, loan summary, borrower membership agreement, terms of use, truth in lending disclosure, and a spreadsheet describing the amount borrowed, along with the application of payments, interest and charges to the account.

5

(Scully Aff., Ex. G.)  On April 2, 2019, plaintiff filed an answer to Credit Corp.'s state court complaint in the Collection Action, generally denying the allegations in the complaint. (Defs. 56.1 ¶ 6; Pl. Resp. ¶ 6; Scully Aff., Ex. H, Answer in Collection Action.)  In his answer, plaintiff notes that defendants "failed twice to provide a legal binding agreement (contract) with [plaintiff] and the original creditor, and [defendants] and its attorney's office are in violation of the FDCPA."  (Scully Aff., Ex. H.)

On April 10, 2019, plaintiff sent K&P a letter, stating his intention to initiate a lawsuit under the FDCPA against defendants if defendants did not dismiss with prejudice the "frivolous" Collection Action filed against plaintiff. (Scully Aff., Ex. I.)  Plaintiff notes that defendants "provided a non-binding agreement (contract) with no signature on said contract" to plaintiff in response to his validation request. (*Id.*)  On October 21, 2019, plaintiff commenced this instant action under the FDCPA in state court, which was subsequently removed to federal court on November 15, 2019.  (ECF No. 1, Notice of Removal.)

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

6

of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

When bringing a motion for summary judgment, the movant carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Rojas*, 660 F.3d at 104. In deciding a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A moving party may indicate the absence of a factual dispute by "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the moving party has met its burden, the nonmoving party normally "must come forward with admissible

7

evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## DISCUSSION

Defendants have moved for summary judgment as to plaintiff's claim under the FDCPA. (*See* ECF Nos. 15, 17.) Plaintiff opposes defendants' motion for summary judgment. (ECF No. 16.) Plaintiff asserts that defendants violated the FDCPA, 15 U.S.C. § 1692e, by refusing "to drop the [Collection Action] even after [defendants] failed to provide the original documentations signed by" plaintiff. (Compl. ¶¶ 23-24.) Plaintiff also alleges that defendants violated 15 U.S.C. § 1692f for the same reason. (*Id.* ¶¶ 25-26.) In sum, plaintiff argues that defendants used deception and unfair or unconscionable means to collect a debt in violation of the FDCPA, by filing the Collection Action and failing to dismiss the action after failing to provide "original documentations signed" by plaintiff in response to plaintiff's letters disputing the debt. (*Id.* ¶¶ 22-27.)

### I. Applicable Law

"A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer

8

debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). The parties do not dispute that plaintiff has satisfied the first two elements of his FDCPA claim: (1) that plaintiff is a consumer who allegedly owes a debt; and (2) that defendants are debt collectors under the FDCPA. (*See* Compl. ¶¶ 5-6; ECF No. 7, Answer, ¶¶ 5-6); *see* 15 U.S.C. § 1692a(3) (A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt"); § 1692a(6) (A "debt collector" is a person "who regularly collects . . . debts owed . . . another" or a person involved "in any business the principal purpose of which is the collection of any debts."). Because it is undisputed that plaintiff is a consumer and that defendants are debt collectors, the only remaining question is the final element of plaintiff's FDCPA claim: whether defendants engaged in any act or omission in violation of the FDCPA.

Under the FDCPA, a debt collector is obligated to identify "the name of the creditor to whom the debt is owed," 15 U.S.C. § 1692g(a)(2), and "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e. Section 1692f

9

prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

In determining whether a communication violates the FDCPA, courts analyze the communication using a "least sophisticated consumer" standard. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005). Under this standard, "a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Taylor v. Fin. Recovery Servs.*, 886 F.3d 212, 214 (2d Cir. 2018) (internal quotation marks and citation omitted). The standard, however, will not render debt collectors liable for "bizarre or idiosyncratic interpretations of debt collection letters," *Greco*, 412 F.3d at 363 (internal quotation marks and citation omitted), or "unreasonable misinterpretations of collection notices," *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). With these principles in mind, the court turns to plaintiff's FDCPA claim. For the reasons set forth below, the court grants defendants' motion for summary judgment in its entirety.

II. **Application**

Plaintiff asserts that defendants violated Sections 1692e and 1692f of the FDCPA by failing to dismiss the Collection Action after failing to provide adequate documentation to plaintiff in response to his validation

10

requests. (*See* Compl. ¶¶ 22-27 (Count 1); Pl. Opp. at 5-6.) In opposition to defendant's motion for summary judgment, plaintiff also argues that defendants provided "two validation notice letters concerning the same alleged debt, dated one day apart," which would "obviously lead to confusion" for plaintiff. (Pl. Opp. at 4.)

Upon review of the record presented by the parties, the court concludes that no reasonable jury could find that defendants violated the FDCPA by providing insufficient documentation as demanded by plaintiff in plaintiff's validation requests. Accordingly, for the reasons set forth below, the court grants defendants' motion for summary judgment and dismisses plaintiff's complaint in its entirety.

A. Defendants' Two Validation Notices

In opposition to defendants' motion for summary judgment, plaintiff argues, in essence, that genuine disputes of material fact preclude summary judgment because: (1) a reasonable consumer may be confused by receiving two nearly identical validation notices on separate days, and (2) defendants failed to provide sufficient documentation in response to plaintiff's request for validation of the debt. (*See generally* Pl. Mem. at 4-6.)[1]

---

[1] Plaintiff failed to include page numbers on his motion papers. Accordingly, the page references noted herein refer to the page number provided in the ECF stamp at the top of the document.

11

Plaintiff's first argument regarding the validation notices dated July 10 and July 11, 2018 was raised for the first time in plaintiff's opposition briefing and was not referenced in the complaint. (*See generally* Compl.)  Courts have repeatedly held that it is improper to consider claims not asserted in the complaint and raised for the first time at the summary judgment stage. *See Greenidge v. Allstate Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (refusing to reach the merits of a claim raised in the plaintiffs' opposition to summary judgment); *Stapleton v. Barrett Crane Design & Eng'g*, 725 F. App'x 28, 32 (2d Cir. 2018) (summary order) (affirming district court's decision not to consider a new theory of liability raised in a brief in opposition to summary judgment).

Here, although plaintiff's complaint alleged that he received two validation notices on July 10 and July 11, 2018 (Compl. ¶¶ 10, 12), nowhere in the complaint did plaintiff assert that receipt of two validation notices constituted deceptive or unfair acts in violation of the FDCPA.  Indeed, this argument was not raised until plaintiff opposed defendants' motion for summary judgment. (*See* Pl. Opp. at 4 ("Defendants have not disputed the fact that Plaintiff received two validation notice letters concerning the same alleged debt, dated one day apart . . . This would obviously lead to confusion for plaintiff as to which date the 30 day period would commence

12

from.").) Although plaintiff's theory may have plausibly raised a question of fact regarding defendants' compliance with the FDCPA, plaintiff failed to properly assert this claim in his complaint. *See Saray Dokum v. Madeni Aksam Sanayi Turizm A.S.*, No. 17-cv-7495 (JPC), 2021 WL 1199470, at *7 (S.D.N.Y. Mar. 30, 2021) ("Courts regularly reject a party's attempt to raise a new claim or theory in opposition to a dispositive motion, such as a motion to dismiss or a motion for summary judgment."). Instead, plaintiff's complaint alleges that defendants' refusal to dismiss the state Collection Action after failing to provide adequate documents in response to plaintiff's validation requests violated the FDCPA. Accordingly, the court declines to consider plaintiff's belated argument regarding the two validation notices.

B. <u>Defendants' Verification Responses to Plaintiff's Requests for Validation of the Debt</u>

Plaintiff asserts that defendants violated §§ 1692e and 1692f of the FDCPA by failing to "provide the original documentations signed by" plaintiff with respect to the alleged debt. (Compl. ¶¶ 23-26.) Plaintiff argues that it is "not unreasonable to require a creditor attempting to collect a debt to provide to a consumer the same level of documentation of the debt which would be necessary to prevail in litigation to collect the debt." (Pl. Opp. at 5.) Plaintiff reasons that if

13

the creditor has all the "required documentation," then "production of such proof would possibly remove the need to commence a lawsuit," thus saving judicial resources.  (*Id.*) Accordingly, plaintiff argues that because defendants did not provide sufficient documentation in response to plaintiff's validation requests, defendants have violated the FDCPA by refusing to dismiss the Collection Action.  (Compl. ¶¶ 22-27.)

Although a consumer's dispute may trigger the debt collector's obligation to verify the debt, "the Second Circuit has not spoken authoritatively on the issue of what constitutes 'verification of the debt' for purposes of complying with the FDCPA."  *Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 500 (E.D.N.Y. 2015).  Although the Second Circuit has not expressly addressed the issue, district courts within this Circuit have assessed the sufficiency of debt collector's verification and have concluded that "[a]t a minimum, verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Blanc v. Palisades Collection, LLP*, No. 06-cv-1626, 2007 WL 3254381, at *7 (S.D.N.Y. Nov. 1, 2007) (quoting *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1173-74 (9th Cir. 2006)); *see also Scheinman v. Glass & Braus LLC*, No. 18-cv-1551 (SRU), 2020 WL 6875139, at *9 (D. Conn. Nov. 23, 2020) (District courts

14

within the Second Circuit have consistently held that "verification . . . does not require the debt collector to do anything more than confirm the amount of the debt and the identity of the creditor, and relay that information to the consumer.").

District courts have applied this standard to find debt collector's verification letters sufficient under the FDCPA, where the debt collectors provide "a written statement that the amount being demanded is what the creditor is claiming is owed." *Bascom v. Dubin*, No. 03-cv-6159, 2007 WL 210390, at *3 (W.D.N.Y. Jan. 25, 2007) (citations omitted); *see, e.g.*, *Ritter*, 118 F. Supp. 3d at 502 (finding debt collector sufficiently verified the debt where, in response to the plaintiff's dispute, the debt collector "provided credit card statements covering a period of two years," which "while not providing an itemization of charges, clearly contained the [p]laintiff's name and home address, and included a charge-off in the amount of $918.78 — the amount the [debt collector] claim[ed] [was] owed"); *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 410 (E.D.N.Y. 2012) (holding that the verification letter to borrower was sufficient to verify the loan under the FDCPA where the letter listed the entity that originated the mortgage loan and the entity that subsequently purchased the loan and also included "copies of the loan and

15

mortgage documents," "the assignment agreement," and "a copy of the 'good-bye' letter" from the prior lender), *aff'd*, 529 F. App'x 45 (2d Cir. 2013).

Here, the court concludes that the documents provided by defendants to plaintiff in response to plaintiff's validation requests were sufficient and in compliance with the FDCPA. Specifically, in response to plaintiff's first validation request, on November 16, 2018, defendant Credit Corp. provided documents related to the WebBank credit account ending in 8903, including a loan agreement, loan summary, borrower membership agreement, terms of use, truth in lending disclosure, and a spreadsheet describing the amount borrowed, along with the application of payments, interest and charges to the account. (Scully Aff., Ex. C.)  In response to plaintiff's second validation request, on or about March 8, 2019, defendant K&P sent plaintiff documents related to the credit account ending in 8903, including a loan agreement, loan summary, borrower membership agreement, terms of use, truth in lending disclosure, and a spreadsheet describing the amount borrowed, along with the application of payments, interest and charges to the account. (Scully Aff., Ex. G.)  These documents, although unsigned by plaintiff, qualify as "written statement[s] that the amount being demanded is what the creditor is claiming is owed," and are sufficient to verify the debt.  *Panzer v. Alternative Claims*

16

*Mgmt., LLC,* No. 15-cv-5383, 2016 WL 3771251, at *5 (S.D.N.Y. July 8, 2016).

For instance, the loan summary provided by K&P confirms plaintiff's name, email, address, home phone number, cell or work phone number, and also provides details about the account, including the loan identification number, date the loan was issued, original loan amount, and principal balance. (Scully Aff., Ex. G at 77.)  The loan summary also described the loan documents related to the plaintiff's account, including the borrower agreement, credit score notice, truth in lending disclosure, terms of use, credit profile authorization, and bank account verification & debt amortization and indicates the date and time those loan documents were signed.  (*Id.*)

In addition, K&P also provided a spreadsheet describing the amount borrowed and the payments, interest and charges to the account.  (*See* Scully Aff., Ex. G at 91.)  This spreadsheet identifies plaintiff's name, the account number, the original creditor (WebBank), the statement period, the loan amount ($23,675.00), the interest rate (21.99%), and the charged off amount ($22,392.78).  (*Id.*)  Moreover, the spreadsheet describes interest and fees accrued on the account, the dates payments were received, the amount of principal and interest paid, and the total balance amount for a period spanning from June 2015 to December 2016.  (*Id.*); (*see also* Scully Aff., Ex. G

17

at 92 (Account statement describing plaintiff's name and address, account details, outstanding balance of $22,392.78).) Collectively, these documents made it clear to plaintiff that "the amount being demanded is what the creditor is claiming is owed," *Blanc*, LLP, 2007 WL 3254381, at *7, and the documents were "sufficient to verify the loan for purposes of the FDCPA," *Hawkins-El*, 891 F. Supp. 2d at 410.

Although plaintiff asserts that the FDCPA should require a creditor to "provide to a consumer the same level of documentation of the debt which would be necessary to prevail in litigation to collect the debt," plaintiff does not cite to any authority and the court is unaware of any, entitling debtors the right under the FDCPA to demand specific types of documents from creditors when seeking validation of a debt. (Pl. Opp. at 5.) Thus, plaintiff's unsupported assertion is insufficient to preclude summary judgment, where defendants have presented undisputed evidence that they complied with the FDCPA by verifying plaintiff's debt. *See Munroe v. Specialized Loan Servicing LLC*, No. 14-cv-1883 (MKB)(LB), 2016 WL 1248818, at *8-9 (E.D.N.Y. Mar. 28, 2016) (granting summary judgment to defendants where plaintiff's FDCPA claims challenging the verification of a debt failed as a matter of law). Although plaintiff may dispute the validity of the debt, plaintiff cites to no evidence in the record from which a jury could find that

18

that the debt that K&P was attempting to collect was invalid or did not belong to plaintiff. Accordingly, as noted by the court in *Hawkins-El*, a "[p]laintiff cannot forestall collection efforts by repeating the same unsubstantiated assertions and thereby contend that the debt is 'disputed,'" because if plaintiff were "permitted to do so, debtors would be able to prevent collection permanently by sending letters, regardless of their merit, stating that the debt is in dispute." *Hawkins-El*, 891 F. Supp. 2d at 410.

For these reasons, the court concludes that defendants satisfied their burden of demonstrating that there is no genuine dispute of material fact with respect to the verification of the debt owed by plaintiff. Accordingly, the court concludes that no reasonable jury could find in favor of plaintiff as to the count in his complaint alleging violations of §§ 1692e and 1692f and grants defendants' motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. The Clerk of Court is respectfully requested to enter judgment for defendants and close this case.

SO ORDERED.

/s/
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated: Brooklyn, New York
September 2, 2021